**ORIGINAL**

(Rev. 5/05)

FORM TO BE USED BY A PRISONER IN FILING A COMPLAINT
UNDER THE CIVIL RIGHTS ACT, 42 U.S.C. §1983

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

(1) <u>SYLVESTER SHOCKLEY   #0090135</u>
    (Name of Plaintiff)    (Inmate Number)

<u>DELAWARE CORRECTIONAL CENTER</u>
<u>1181 PADDOCK ROAD; SMYRNA, DE 19977</u>
    (Complete Address with zip code)

: 07-497-

(2) _____
    (Name of Plaintiff)    (Inmate Number)

(Case Number)
( to be assigned by U.S. District Court)

_____
    (Complete Address with zip code)

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

vs.

**CIVIL COMPLAINT**

(1) <u>RONALD HOSTERMAN</u>

(2) <u>THOMAS CARROLL</u>

(3) <u>JOHN DOE PRISON OFFICIALS</u>
    (Names of Defendants)

• • Jury Trial Requested

**FILED**

**AUG 1 4 2007**

U.S. DISTRICT COURT
DISTRICT OF DELAWARE

(Each named party must be listed, and all names
must be printed or typed. Use additional sheets if needed)

I.   PREVIOUS LAWSUITS

    A.   If you have filed any other lawsuits in federal court while a prisoner, please list the caption and case number including year, as well as the name of the judicial officer to whom it was assigned:

      <u>42 U.S.C. Section 1983; 99-329; May 26, 1999;</u>

      <u>Judge Sue L. Robinson</u>

      <u>42 U.S.C. Section 1983; 07-216; April 18, 2007;</u>

      <u>Judge Sue L. Robinson</u>

_____

_____

II. **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

In order to proceed in federal court, you must fully exhaust any available administrative remedies as to each ground on which you request action.

A. Is there a prisoner grievance procedure available at your present institution?  • XXX • • No

B. Have you fully exhausted your available administrative remedies regarding each of your present claims?  • XXX • • No

C. If your answer to "B" is <u>Yes</u>:

1. What steps did you take? ___FILED AN INMATE GRIEVANCE___

2. What was the result? ___ACCORDING TO THE GRIEVANCE CHAIRMAN "NOT GRIEVABLE".___

D. If your answer to "B" is <u>No</u>, explain why not: _____

III. **DEFENDANTS** (in order listed on the caption)

(1) Name of first defendant: ___RONALD HOSTERMAN___

Employed as ___TREATMENT ADMIN.___ at ___DELAWARE CORR. CENTER___

Mailing address with zip code: ___1181 PADDOCK ROAD; SMYRNA, DE 19977___

(2) Name of second defendant: ___THOMAS CARROLL___

Employed as ___WARDEN___ at ___DELAWARE CORR. CENTER___

Mailing address with zip code: ___1181 PADDOCK ROAD; SMYRNA, DE 19977___

(3) Name of third defendant: ___JOHN DOE PRISON OFFICIALS___

Employed as ___UNKNOWN___ at ___DELAWARE CORR. CENTER___

Mailing address with zip code: ___1181 PADDOCK ROAD; SMYRNA, DE 19977___

(List any additional defendants, their employment, and addresses with zip codes, on extra sheets if necessary)

IV. STATEMENT OF CLAIM

(State as briefly as possible the facts of your case. Describe how each defendant is involved, including dates and places. Do not give any legal arguments or cite any cases or statutes. Attach no more than three extra sheets of paper if necessary.)

1. PLEASE SEE THE ATTACHED COMPLAINT.

2. PLEASE SEE THE ATTACHED COMPLAINT.

3. PLEASE SEE THE ATTACHED COMPLAINT.

V. RELIEF

(State briefly exactly what you want the Court to do for you. Make no legal arguments. Cite no cases or statutes.)

1. PLEASE SEE THE ATTACHED COMPLAINT.

2. PLEASE SEE THE ATTACHED COMPLAINT.

[

3. PLEASE SEE THE ATTACHED COMPLAINT.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this __10th__ day of __AUGUST__, 2__007__.

_Sylvester Shockley_
(Signature of Plaintiff 1)

_____
(Signature of Plaintiff 2)

_____
(Signature of Plaintiff 3)

4

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| Sylvester Shockley ) | |
|       Plaintiff ) | |
| ) | |
| v. ) | Case No. |
| ) | Civil Rights Complaint |
| Ronald Hosterman, ) | Pursuant to U.S.C. Section 1983 |
| Treatment Administrator ) | Jury Trial Demanded |
| Delaware Correctional Center, ) | |
| Thomas Carroll, Warden ) | |
| Delaware Correctional Center, and ) | |
| John Doe Prison Officials, ) | |
| Delaware Correctional Center ) | |
|       Defendants. ) | |

## A. JURISDICTION

This complaint alleges that the civil rights of the Plaintiff, Sylvester Shockley, who presently resides at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977 were violated by the actions of the below-named individuals, which actions were directed against the Plaintiff at the Delaware Correctional Center, as follows:

1.     Defendant Ronald Hosterman works at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977, and is employed as the Treatment Administrator. This Defendant is sued in his individual and official capacity.

2. Defendant Thomas Carroll works at the Delaware Correctional Center, 1181 Paddock Road, Smyrna, Delaware 19977, and is employed as the Warden. This Defendant is sued in his individual and official capacity.

3. Defendants John Doe are prison officials employed at the Delaware Correctional Center who's Names are presently unknown to the Plaintiff. They are sued in their individual and official capacity.

4. All of the Defendants have acted, and continue to act under the color of State law at all times relevant to this complaint.

5. Jurisdiction is invoked pursuant to **28 U.S.C. Section 1343(a)(3) and 42 U.S.C. Section 1983.**

### B. STATEMENT OF FACTS

6. On January 6, 2006 Delaware Correctional Center (DCC) Officers conducted an authorized "shakedown" in the Prison Braille Program room where the Plaintiff (Shockley) was employed.

7. During the course of the shakedown, Officers allegedly found unauthorized items in all the inmate work areas. As a consequence of one of the Officers finding (1)

alleged unauthorized item (i.e. an open razor blade) in the Plaintiff's work area, on January 7, 2007, Plaintiff was served with disciplinary charges for Possession of Dangerous Contraband, Abuse of Privileges and Failing to Obey an Order. Two (2) other inmates Braille workers were also charged with disciplinary infractions related to other types of alleged unauthorized items found during the course of the shakedown.

8. Pursuant to standard prison proceures, Plaintiff and the other two inmate workers were suspended from the Braille Program pending the outcome of separate disciplinary investigations and subsequent hearings.

9. On January 23, 2006, the Plaintiff received a disciplinary hearing before Staff Lieutenant Bernard Williams at the Delaware Correctional Center. The hearing conducted relate specifically to the unauthorized items seized by Correctional Officers during the shakedown of the Braille room on January 6, 2006.

10. Staff Lieutenant Williams' investigation determined that the Plaintiff had not violated any prison rules of conduct and found the Plaintiff *"Not Guilty"* on all charges stemming form the January 6, 2006 shakedown.

11. The finality of the other two Braille inmate workers disciplinary hearing(s) was: one had pled guilty as charged and (he) was dismissed from the Program; the other inmate worker was found guilty by the prison disciplinary board of having

3

unauthorized items and was restored back to the Braille Program, *against* standard prison Procedures.

12. Pursuant to Standard prison procedures, the Plaintiff was restored back to his work assignment in the Braille Program.

13. Approximately three (3) weeks later on February 13, 2006, the Work Site Supervisor, Mr. Robert Miller, informed the Plaintiff and all the other Braille workers "not to report for work" the following day.

14. On February 15, 2006, the Plaintiff attempted to report to work, however, his housing unit Sergeant, Ralph Bailey, informed him that he and the other above restored inmate worker were suspended from the Braille Program per orders of Defendant Hosterman. The Plaintiff asked for an explanation for the suspension, and Sergeant Bailey stated, "It had something to do with disciplinary proceedings".

15. Defendant Hosterman had ordered the Plaintiff's suspension without first providing the Plaintiff with pertinent information relating to date, time, specific accusation of rule violation and/or the identification of other persons involved. Additionally, neither Defendant Hosterman nor any other prison authority provided the Plaintiff with any type of justification or explanation for these actions. These actions on the part of Defendant Hosterman and/or other prison authorities violated standard prison procedures and denied the Plaintiff's due process.

16. The Plaintiff sent a letter of objection to Defendant Carroll and copies of the letter to other prison officials, complaining about the manner in which the Plaintiff had been suspended from his work assignment, and requesting Defendant Carroll to correct the matter. Plaintiff did not receive a response from Defendant Carroll or from any other prison official.

17. Plaintiff submitted an Inmate Grievance. The Grievance Chairman denied the grievance stating, "It is a classification issue", even though the grievance was based on the Plaintiff being suspended from his job against prison policies and procedures.

18. Upon information and belief, the reason for the Plaintiff's suspension is because Defendant Hosterman and/or John Doe prison officials resented the fact that the Plaintiff had been found *"Not Guilty"* of all charges against him, and had been restored to his classified work assignment. So, to neutralize the prison disciplinary board decision of finding the Plaintiff "Not Guilty", and to remove the Plaintiff out of the Braille Program, Defendant Hosterman and/or John Doe prison officials -- against standard prison policies and procedures -- conspired and acted oppressively and arbitrarily, by holding a secret disciplinary hearing amongst themselves, and tried the Plaintiff a second time in absentia and found him guilty of the same offenses he had already been acquitted of by the prison disciplinary board.

19. The prison officials mentioned above (in paragraph 18) which made the decision to circumvent the appropriate disciplinary procedure calls itself the Executive Committee or Executive Board. This Committee is not and official body within the structure and command of the Delaware Correctional Center, nor does it have the legitimate authority to overrule a disciplinary board decision; nor is this board empowered to hold an official disciplinary hearing relating to an inmate violation of prison rules of conduct. Neither is this board empowered to render disciplinary verdicts and punishment. However, to enact punishment, Defendant Hosterman and/or John doe prison officials (i.e., Executive committee) ordered that the Plaintiff be suspended pending permanent removal out of the Braille Program. These actions on the part of Defendant Hosterman and/or John Doe prison officials (Executive Committee), deprived the Plaintiff of his right to procedural due process to have: (1) a twenty-four hour advance written notice of the hearing on the claimed violation; (2) a qualified right to an opportunity to be heard, including calling witnesses, presenting evidence in his defense consistent with prison policy, safety and correctional goals, and utilizing an inmate counsel as allowed by the regulations of the Disciplinary Board; (3) a written statement by the fact-finder detailing the evidence relied upon and the reasons for the disciplinary action; (4) the opportunity to earn good time credits, monthly wages and participation in vocational training work assignment, and (5) protection against the usurpation of plaintiff's right to not be twice put in jeopardy for the same offenses. These violations created an atypical and significant hardship to the Plaintiff by subjecting

him to conditions different from those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion.

20. Subsequently, to further enforce and to execute the so-called Executive Committee's disciplinary judgment and punishment against the Plaintiff, Defendant Hosterman ordered the Multi-Disciplinary Team (MDT) to reclassify the Plaintiff out of the Braille Program. Conversely, Defendant Hosterman ordered the MDT to restore the other inmate worker who had been judged guilty by the so-called Executive Committee -- for the same illegitimate reason the Plaintiff had been found guilty of -- back to the Braille Program where he continues to be employed to this present date. These actions on the part of Defendant Hosterman violated standard prison policies and procedures and deprived the Plaintiff of the right to due process and equal treatment that similarly situated inmates have been afforded by prison officials. There is no rational relation between the dissimilar treatment and legitimate penal interest.

21. The Plaintiff sent a letter of appeal to the Institutional Based Classification Committee (IBCC) based on the oppressive actions of Defendant Hosterman and John Doe prison official (Executive Committee). The IBCC at their meeting rejected the MDT recommendation and approved the Plaintiff to return to the Braille Program. However, upon information and belief, the day the IBCC approved the Plaintiff's reinstatement back to the Braille Program, Defendant Hosterman made a rare appearance before the IBCC ostensibly to observe the

Proceedings and the outcome, and after the IBCC made the decision to return the Plaintiff back to his work assignment, Defendant Hosterman went and conferred with Defendant Carroll to convince him to override the IBCC decision based on the aforementioned actions on the part of Defendants Hosterman and John Doe prison officials (Executive Committee), thus, preventing the Plaintiff's returning to the Braille Program.

22.  The Plaintiff sent several letters of appeal to Defendant Carroll with copies to other prison officials to intervene and stop the oppressive actions of his subordinate personnel. Plaintiff did not receive a response from Defendant Carroll or any other prison official.

23.  Upon information and belief, Defendant Carroll deliberately ignored the Plaintiff's pleas for help and chose by tacit authorization to condone the actions of his subordinates against the Plaintiff. Defendant Carroll, as the Warden knew or reasonably should have known that his conduct infringed upon the constitutional rights of the Plaintiff and violated long established guidelines and rules of conduct relating to inmate institutional adjustment and the code of conduct of Departmental staff; and that his conduct was related to constitutional violations committed by his subordinates. These actions on the part of Defendant Carroll not only violate standard prison policies and procedures, but his actions also deprived the Plaintiff of the right to due process and equal treatment, thus, creating an atypical and significant hardship to the Plaintiff by subjecting him to conditions different from

8

those established by institutional policy and procedure; and those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion; and being treated differently from other similarly situated inmates. There is no rational relation between the dissimilar treatment and any legitimate penal interest.

24. On June 8, 2007, the Plaintiff finally received a response from Deputy Warden Betty Burris stating, "You will not be returning to the Braille Program." The Plaintiff sent a letter of response requesting Deputy Warden Burris to provide an official explanation for not permitting the Plaintiff to return to his classified vocational work assignment. As of this date the Plaintiff has not received any response from Deputy Warden Burris regarding this matter.

## C. CLAIMS FOR RELIEF

25. Plaintiff support the following claims by reference to the previous paragraphs of the complaint:

### CLAIM I

26. Defendant Hosterman arbitrarily and without legitimate purpose or penological interest used his authority to remove the Plaintiff from his classified work assignment without ever providing the Plaintiff with any information relating to date, time, specific accusation of rule violation and/or the identification of other person(s) involved. These actions on the part of Defendant Hosterman violated standard prison policies and procedures, and did not relate to any legitimate concerns of rehabilitation, institutional order, and security. This created an atypical and significant hardship on the Plaintiff by subjecting him to conditions different from those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion, and deprived the Plaintiff of his procedural and substantive due process rights in violation of the 5th, 6th and 14th Amendments to the United States Constitution.

### CLAIM II

25. Defendants Hosterman and/or John Doe prison officials (Executive Committee) in retaliation for the Plaintiff having been found "*Not Guilty*" on all charges by the prison disciplinary board stemming from the January 6, 2006 shakedown of the

10

Braille Program room, and having been restored to his classified work assignment, acted in a sufficiently culpable state of mind when they conspired together and then acted oppressively by holding a secretive illegitimate disciplinary hearing amongst themselves. Defendants in that hearing, then tried the Plaintiff a second time in absentia, and then found him guilty of the same charges he had already been acquitted of by the legitimate prison disciplinary board, and then enacted punishment by suspending the Plaintiff from his job pending permanent removal from his classified work assignment. These actions on the part of the Defendants resulted in violations of standard prison policies and procedures, and have deprived the Plaintiff of his right to procedural and substantive due process to have: (1) A twenty-four hour advance written notice of the hearing on the claimed violation(s); (2) A qualified right to an opportunity to be heard, including calling witnesses, presenting evidence in his defense consistent with prison policies, safety and correctional goals, and utilizing an inmate counsel as allowed by the regulations of the disciplinary board; (3) A written statement by the fact-finder detailing the evidence relied upon and the reasons for the disciplinary action; (4) The opportunity to earn good time credits, monthly wages and participation in a vocational training work assignment; and (5) Protection against the usurpation of the Plaintiff's right to not be twice put in jeopardy for the same offenses. These violations on the part of the Defendants created an atypical and significant hardship on the Plaintiff by subjecting him to conditions different from those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion. These actions

11

violated the Plaintiff's 1st, 5th, 6th 8th and 14th Amendments rights to the United States Constitution.

### CLAIM III

26. To legitimize the so-called Executive Committee's illegitimate disciplinary judgment, and to enforce and execute punishment against the Plaintiff, Defendant Hosterman ordered the Multi-Disciplinary Team (MDT) to reclassify the Plaintiff out of the Braille Program. Conversely, Defendant Hosterman ordered the MDT to restore the other inmate worker who had been suspended along with the Plaintiff, and who also had been found guilty of the same illegitimate disciplinary judgment and punishment by the so-called Executive Committee back to the Braille Program where he continues to be employed to this present date. These actions on the part of Defendant Hosterman violated standard prison policies and procedures, and deprived the Plaintiff of the right to due process and equal treatment that similarly situated inmates have been afforded by prison officials. There is no rational relation between the dissimilar treatment and legitimate penal interest. These actions violated the Plaintiff's 5th, 6th and 14th Amendments to the United States Constitution.

### CLAIM IV

27. Defendant Carroll deliberately ignored the Plaintiff's pleas for help, and chose by tacit authorization to condone the actions of his subordinates against the Plaintiff. Defendant Carroll, as the Warden, knew or reasonably should have known that his

conduct infringed upon the constitutional rights of the Plaintiff, and violated long established guidelines and rules of conduct relating to inmate institutional adjustment and the code of conduct of Departmental staff, and that his conduct was related to constitutional violations committed by his subordinates. These actions on the part of Defendant Carroll not only violated standard prison policies and procedures, but his actions also deprived the Plaintiff of the right to due process and equal treatment. This created an atypical and significant hardship to the Plaintiff by subjecting him to conditions different from those established by institutional policy and procedure, and those ordinarily experienced by large numbers of inmates serving their sentences in the customary fashion, and being treated differently from other similarly situated inmates. There is no rational relation between the dissimilar treatment and any legitimate penal interest. These actions violated the Plaintiff's 1st, 5th, 6th 8th and 14th Amendment Rights to the United States Constitution.

### D. PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays that this Court:

1. Declare that the acts and omissions described herein violated Plaintiff's rights under the Constitution and laws of the United States.

2.     Enter a permanent injunction ordering Defendants Thomas Carroll, Ronald Hosterman, John Doe prison officials, their successors, agents, employees and all persons acting in concert with them from using or abusing their authority to retaliate against the Plaintiff as a result of filing legitimate grievances or lawsuits under the laws of the United States; immediately reinstate the Plaintiff back to his former classified Braille Program work assignment; immediately reinstate all pay and meritorious good time credits forfeited from the time of the Plaintiff's arbitrary suspension and termination from the Braille Program to the present, and all rights and privileges previously enjoyed; expunge the proceedings that arbitrarily and illegitimately found the Plaintiff guilty and terminated him from his classified work assignment, and all other written communications or indicia to the detriment of the Plaintiff from this institutional file an/or record.

3.     Enter judgment in favor of the Plaintiff for nominal, compensatory, and punitive damages, as allowed by law, against each Defendant jointly and severally.

4.     Order such additional relief as this Court may deem just and proper.

Date: AUG. 10. 2007

Respectfully submitted,

*Sylvester Shockley*
Sylvester Shockley
SBI #00090135
Delaware Correctional Center
1181 Paddock Road
Smyrna, Delaware 19977

15

Pursuant to **28 U.S.C. Section 1746**, I declare and verify under penalty of perjury under the laws of the United States of America that the facts stated in the complaint are true to the Plaintiff's knowledge, and that any facts stated in information and belief are true to the best of the Plaintiff's knowledge and belief.

**Executed on this dated**: AUG. 10, 2007

*Sylvester Shockley* (signature)
Sylvester Shockley

IM Sylvester Shockley
SBI# 090135  UNIT W
DELAWARE CORRECTIONAL CENTER
1181 PADDOCK ROAD
SMYRNA, DELAWARE 19977



$ 04.60
AUG 13 2007
MAILED FROM ZIP CODE 19977

Clerk of the U.S. District Court for Delaware
844 King Street, Lockbox 18
Wilmington, Delaware
19801

U.S.M.S.
X-RAY